Oral Argument Not to Exceed 15 Minutes per Side, Ms. Sandi Galli for the Plaintiff Appellant. May it please the Court, I'd like to reserve five minutes for my rebuttal. The District Court erred when it ruled on summary judgment against Wright Medical based on an interpretation of an indemnification provision that was in a supplier agreement. Rather than determining the party's intent as expressed by unambiguous language within the four corners of the agreement, the District Court turned to a faulty trade usage analysis. In doing so, the District Court did not consider the plain meaning of the claims arising from language that other courts have found to be both unambiguous and broad in the context of indemnification provisions. The District Court also erred in finding that Tennessee's statutory warranty of non-infringement was inapplicable to the facts of this case. I will start first with the breach of contract issue. In 2006, Spineology and Wright Medical negotiated the terms of a supplier agreement for Spineology's Shaper, and that's a surgical instrument that Spineology designed to cut bone. Spineology designed the Shaper to be used with a product called a cannula. Now, a cannula is nothing more than a hollow metal tube that is used to guide the Shaper through the patient's flesh so that it can then be taken to the location where it could be used. They didn't sell you the cannula. They did not sell us the cannula. And so how does that arise from the purchase order? The language arising from in the indemnification provision has been interpreted to be broad as requiring only a substantial nexus between the claims and the conduct that's contemplated by the purchase order. In this case... What if you materially change what they sell you? In this case, with respect to this particular indemnification provision, because of the arising from language in there and there's no other exclusion in the indemnification provision itself that addresses modifications to the device, we would submit that the indemnification provision remains broad and liability is broad. But why would anybody do that?  Why would they indemnify you, let you take the product and do all kinds of other things with it or combine it with something else and say, I'm going to insure you against... Because the infringement, my understanding is the infringement allegation had to involve the cannula and the Shaper. So it's not just the product that was sold. So why would anybody in their right mind indemnify you against everything that could possibly happen later? If they didn't intend for the indemnification provision to be broad, what could have happened, which did not happen in this case, is that there would have been an express exclusion in the agreement itself. And that's what you see in a lot of other agreements where there is some sort of indemnification. Well, we also see language that says the indemnification includes later modifications or combinations, right? I mean, you could do either one. We don't have either one in this case. That's right. That's correct. Then why shouldn't we construe it against you if we're not sure? You drafted it, right? Well, it was a form agreement, but it was also a negotiated agreement. And the only time when the rules of construction for contracts to be construed against the drafter, that happens when there is an ambiguity. Right, but if we're not sure which one, Judge Nalbandian just pointed you to two scenarios where it would be clear. If we're not sure which one, absent either of them, and we say, okay, it's ambiguous, then do you lose? Well, I think in that case that there should be a factual inquiry that's undertaken to really understand what the parties to this agreement intended. And none of the circumstances that were existing at the time that the parties entered into this agreement would support that. Well, let's say there's two possibilities. Judge Nalbandian just gave you both. One is it's a loan, the shaper, and one is subsequent modifications are covered. We're not sure which one fits in this language, and we say it's ambiguous. Then do we construe it against you and say, well, it had to mean a loan because you drafted it, or are you saying you didn't draft it? You say it's a form agreement, but. It is a form agreement, but it was not an agreement that was necessarily accepted by default. Again, the parties negotiated the agreement. If an ambiguity is found, then I think what the court needed to do was look at the circumstances surrounding the formation of the agreement. Those circumstances included that the parties negotiated it. Spynology didn't accept all the provisions in the agreement. They, in fact, insisted that several of the provisions in the agreement had to be eliminated because they wouldn't accept them. Would it then be a jury question? It could be a jury question, yes. Again, this was decided on summary judgment, so it would have been inappropriate for the judge to dismiss it at this stage if there were these factual issues that needed to be considered. Could the device be used without a cannula? There has been no evidence presented by Spynology or no explanation of how that device could be used without a cannula. Does the patent itself say it's optional? The patent itself does say it's optional, but the device that was sold to Wright Medical, there is no apparent use of that device that was sold to Wright Medical without using it in conjunction with a cannula. In Spynology's own instructions to its customers, the only way to use it is with a cannula. And again, it makes sense. This is a long instrument. You're passing it through the patient's flesh so they can then put it next to the bone location where you could cut a cavity in that bone. And this tube provides a stable passageway. Once you put the instrument through there, open up the blades, then you rotate the instrument within that tube itself. It's just nothing is apparent to us about how that could be used without the cannula. Could you open up a person surgically and then use the device in a bone or on a bone? I guess you'd have to do it on a bone if you're just, in my hypo, cutting them open first. And again, we have not seen anything in the record or any of the documents where that is how the instrument is used. Again, go back to the patent. Doesn't it describe that procedure without you talking about the cannula? The patent does say that the cannula is optional, and it does, in the abstract, describe the use of these shaper without a cannula. First, there were a couple of different embodiments of a shaper that were disclosed in the patent, so it's not clear which embodiment was necessarily being described. But even with that said, again, the shaper that we bought that was sold to us by Spinalogy, the only apparent use of that is with the cannula. And again, that's what Spinalogy's own instructions to its suppliers, to the surgeons, direct those surgeons to do. So you're saying that they knew that the only plausible infringement action that would ever happen would have to have involved the cannula with the shaper, and therefore it's reasonable in some sense that they would have indemnified you against the use of that combination? That's correct. And I'll also point out, at the time that they entered into the supplier agreement with Wright Medical, a couple of years before, their shapers had also been accused of infringing those same patents. So they knew about the risk. The shapers alone? Again, it was the same patents, so it had to be the shapers in conjunction with the cannula. Well, it wouldn't have to have been a method or a process. I mean, it could have just been the shaper, right? I mean, in theory. I'm not sure. I guess we could look it up. You are correct with respect to that, but under the facts of this particular case, the patents that they were accused of infringing or that they were notified that their shapers infringed were the same patents that Wright Medical was later accused of infringing. And the claims in those patents included either the use of the shaper with a cannula or a system in which the shaper had to be used with a cannula. So they were well aware of the risk at the time. They did nothing when they were negotiating the agreement with Wright Medical to modify the indemnification provision. They did nothing. There's an exception in the indemnification provision, too. They did nothing to modify that exception so that it would exclude other circumstances where they would not accept liability for infringement. Go ahead. I was going to change to the other issue that she wanted to raise. Okay. Go ahead. You go on, please. No, my first question was do we even need to get to the other issue if we ruled in your favor on this? If you rule in our favor on the contract issue, then no, we don't need to reach the UCC issue. And with respect to the UCC issue, we're happy to rest on our briefing with respect to that. I think that lays out the reasons there where we believe that there is an intent for the warranty of non-infringement to apply to the buyer's use of a product that is provided by the seller. But at the time of the delivery of the goods, there was no infringement action going on, was there? At the time of the delivery of the goods, there was no infringement action going on. However, the patents that we were accused of infringing were in force. Spynology had previously already been notified that the shapers may infringe those patents. And at the time of delivery, there was really no other way to use the shaper except with a cannula. Thank you. Thank you. Good morning. Randall Scarr for Spynology, the EPILEE. I'd first like to start addressing the actual how this all came about as far as the steps involved. So in 2006, 2007, Spynology sells Wright Medical 50 shapers. Wright Medical, what, eight years, nine years later, gets sued by OrthoPhoenix for patent infringement. Presumably, they're still using our shapers, but we know that they're making their own shapers as well. So what Wright Medical does is they put these shapers into a kit. They put the cannula in that kit. They provide it to a surgeon with instructions how to use it. The surgeon uses it. Can the shaper be used without the cannula? Oh, certainly. The cannula is usually only there because you're going to put other things in there after. So you put the cannula in. Maybe you're going to clean it out, so you put some tube in there to wash it out. You put in some other stuff. Usually afterwards, you pack in some material after you're done. How do you get the shaper in if you don't use the cannula? Because you have to put the bore. You put the bore in the bone, and you put the shaper into the bore. And there's absolutely no need to put the cannula in. And as I say, the surgeons usually do that because. . . I'm sorry that I'm not a doctor. What is the bore? You take a drill. You take a drill, and you make a drill, and you drill down to the site where you want to ream out the hole. That's what the reamer does. The blades expand. And how do you get the shaper in? You put it down the bore. The blades are contracted. It's a tube. You put it down the bore. So the bore is an open tube. The bore is just a hole in the bone. You drill a hole. You take a drill. You take a drill. You pull the drill out. Yep. Stick in the reamer. Open it up. Make your hole, and you're done. You don't need a cannula. But the cannula is used because normally you're inserting lots of other stuff in there afterwards, and just to keep it open, keep it from other things getting into the bore. But you don't need a cannula. As the patent says on the very product, it's optional because you may only be doing a very simple operation. You don't need a cannula. But I think the cannula is kind of a red herring here. I mean, we didn't sell the cannula, and the cannula is needed for the infringement. But arising from is pretty broad language. Arising from, but that's not the entire language. And I think the most important language is the fact that arising from, let me get the language just right here, the purchase, use, or sale of materials or articles required by the purchase order. To me, that's the linchpin. Required by the purchase order is the shaper, not the cannula. But it arises from the materials required by the purchase order. Right. And so what you're saying is that's clear, that the only thing that arises from the materials required by the purchase order is the shaper. Correct, because that's how we sold them. As the sale is a good case, we get far afield here. But the shaper, the claim has its origin in the shaper, right? I mean, it's the shaper and the cannula. But the infringement claim, I mean, it only happens because you sold the shaper, right? And they put it in the kit. I mean, I understand that it's the whole thing that's the infringement. But then again, the infringement isn't on the shaper. The infringement allegation is on the method in which it was used. And the shaper goes into this kit and has a cannula. But has arising from been interpreted? I mean, it's a broad statement. In some places, it's almost like a but-for causation. Well, I think that. I mean, if it wasn't for this product, there would not be the infringement claim against the system, right? So it's a but-for cause, right? I don't think so. Right Medical is the one that tells the surgeon how to use it. They're the one. They give them an instruction booklet that's in the record. This is how you use it. And OrthoPhoenix says, that's an infringement. You can't use it that way. You can use it another way and it won't infringe, but you can't use it that way. And so. But if the shaper is not in the kit, there is no infringement claim, right? And same with the cannula. If the cannula is not in the kit, there's no infringement. Well, right. But, I mean, the shaper is what's at issue in the case. I mean, this broad indemnity clause arises arising from it. It comes from this contract for the sale of these shapers. Well, I think that if you read it broadly, then you have to kind of ignore that it says required by the purchase order. Because, to me, it's got to be arising from those, from what we sold them. And it did not arise from what we sold them. And it arose, you know, years later under this fact that they use it in the kit and they give the instruction to the surgeon. And the surgeon is the one that's the direct infringer here, not even right medical. So we're so far afield. It does arise from the use of articles required by the purchase order. I would argue no, because it needs a cannula. And the articles sold by Spinalogy did not supply the cannula. So it didn't arise from the use of our products. And this is a sales and goods case. This isn't some, you know. You agreed that we interpret this just to go off on a tangent. You agreed we interpret this not as a sale of good, but as a service provision, right? This provision. Well, this is a sales of goods. No, I understand what it is. I'm going off on a tangent now. Okay, I'm not understanding. So you'll have to. This provision of the contract, we interpret consistent with it being a service, right? This being a service, the indemnification. Oh, being a service that Spinalogy might have to. Yes, indeed. Yes, okay. So I think that if we go back and focus on the fact that these are method claims, they're not actually accusing the. Have there been patent claims involving just the shaper and not method or process claims? There were product claims in the OrthoPhoenix patents, if I recall correctly, but were never asserted against Wright Medical. So those weren't at issue in our indemnification. Were they asserted against you? No. In fact, I think Wright Medical got the facts wrong. When the negotiations with Spinalogy and OrthoPhoenix took place, the patent that they eventually sued Wright Medical over didn't exist yet. And sometime during the negotiation it issued, and they kind of added it to the laundry list of patents they thought that we might infringe. But in the end, there was no action taken. There was no settlement. Everybody just walked away because, assumably, we convinced them that we didn't infringe. When they settled with – Wright Medical settled with OrthoPhoenix, did they settle over – so it was a $600,000 or whatever settlement. Did that – and they produced this X ream, right? Is the X ream your shaper plus their cannula, or is it – that it might not even be your shaper? Correct, yeah. They made their – they kind of copied our shaper and made their own. In this case, we never got into how far, actually, if there were any Spinalogy shaper. So if they made their own shaper and sold it, no cannula, would this cover it based on yours? So they get your shaper, they copy it, they sell it. I hope not. I mean, it's not covered by the sales agreement. This is a sales agreement here, and we didn't sell them a cannula. So if they copy ours, they copy ours at their own risk, I guess. But it's not the goods that we sold them. So if you're going to read the thing that's covered by the purchase order, those certainly weren't covered by the purchase order. And do you know the answer to my question, did they sell any of your shapers? We don't know. We never got that far. They claim they did. The orthopedic complaint never says Spinalogy. There's no allegations against Spinalogy. They don't identify a reamer. And our reamers say Spinalogy on them in big letters. And so, you know, the question that we never got to in this case, which would be the next question, is, you know, did they actually accuse our reamers of infringement here? But the assumption for this appeal is that they did. Right. But this was summary judgment, right? Correct. So presumably one or another side could have produced evidence as to whose shapers were involved in this case. Certainly they could have. You know, we don't know. Well, you would through discovery, right? No. This is a pre-discovery summary judgment motion based on just the facts. Based on the facts meaning what? On the contract. We're saying the language of the contract is clear enough that we don't have any identification. Both sides agreed to that because they cross-moved. And so if we thought the language of the contract was ambiguous, why wouldn't we move on to looking at extrinsic evidence and say that it's a question of fact for a jury? I think if you found it to be ambiguous, you probably would do that, yes. And we wouldn't construe it against the drafter because it was a negotiated contract. Well, it's their contract. You know, negotiated, I guess, but we didn't change that clause. We understood that clause to be exactly what Judge McAllen ruled it to be. It's only our shaper that's at issue here and not Canella and not a method that they have their surgeons use. You know, and again, we didn't supply the method. We didn't supply the case. Why didn't you ask for the word alone? Back to Judge Nalbandian's question. Excuse me? Why didn't you ask for the word? If you were negotiating other provisions, why not ask for the word alone in this? Because we thought it was clear that they only covered items that were subject to the purchase order, and that says alone. Do you want to address the statutory issue? Yeah, I can briefly talk about it. I think the brief covers it pretty well. But, I mean, again, you know, there is this clause, Clause G of the supplier agreement supplied by Ray Medical, that basically says that the statutory provision doesn't apply because we've already negotiated a way to deal with any claims of infringement. And, you know, I think the comments under that UCC section clearly state that it doesn't apply to methods. And I think the case law says it doesn't apply to methods, and we have a method claim here. I think it's a pretty straightforward issue. I just don't think that that applies. I don't know if you have any questions on that. But that's about all I have, I think, anyway. Thank you. Thank you. I'd just like to clarify a couple of points that my friend here had brought up. First off, there was no evidence that's ever been presented in this case that that cannula can be used, that this shaper, I'm sorry, can be used without a cannula. Can you dispute that? If there's no evidence, there's no evidence. There's no evidence. I'm just curious, do you dispute it? To us, there's no use that's apparent, no real-world use that how that instrument can be used without that guide tube to be able to guide it to the location where it needs to be used. We simply don't know how it could be used in that manner. There was also a question that was raised about whether spinology shapers were ever at issue in the case. There was very limited discovery before the summary judgment happened here. But there is evidence that was in the record, and I believe that this is addressed in one of the, I think it's in the reply brief, but it may not be. But Wright Medical had rebranded the spinology shapers under the X-Ream name. So the X-Ream referred both to Wright Medical's version of the product as well as to spinology's version of the product. And, in fact, the settlement agreement that Wright Medical entered into with OrthoPhoenix referred to both the spinology. That's not determinative, right? The settlement agreement wouldn't control. I mean, a finder of fact would actually need to find that some of these spinology shapers were actually sold and subject to that lawsuit. That is correct. It's alleged in the complaint, I assume? No. Well, in the OrthoPhoenix complaint, what was referred to was the X-Ream. What's undisputed in this case is that the shapers, that's Wright Medical bought from spinology. What about your complaint? Our complaint against, in the identification case. All right. In this case. I believe that we do refer to the shapers in this case. As being sold and subject to the lawsuit, because it seems to me you would have. Absolutely correct. I mean, we are not seeking indemnification for the products that we sold. We're seeking indemnification for the damages that were paid with respect to the spinology shapers that we bought and then provided to our customers to use. So suppose that you sold a million shapers, and only 45 of them were spinology shapers. Does that have any impact on this? It doesn't have any impact on liability. It would have an impact on the amount of damages that we were seeking from spinology to fulfill their indemnification obligation. So regardless of whether some of the shapers that were at issue in the North of Phoenix litigation were Wright Medical's version of the shaper or the shapers that were spinology's version of the shaper, their liability, they would still be liable to indemnify us for the infringement arising out of use of the shapers that we bought from them. And that was what we were seeking in our indemnification cause of action against them. The other thing that I wanted to address real quickly is with respect to the breadth of the arising from language. There's other cases that have been cited in our briefing that also have included indemnification provisions. Some of those, there's one case, the WorldLink case, that specifically included combinations, but the facts there were very different because indemnification in that case were being provided by the buyer to the seller. So the buyer was indemnifying the seller against any claims that the seller would have to face due to the buyer's combination of the seller's product with the buyer's system. That's very different. In the other case, in the American Family case, I believe, there was an indemnification provision, but then there was an express carve-out for modifications or combinations. And in that case, again, the parties were disputing whether the infringement allegations fell within that express carve-out. But the main point is that parties have addressed this situation. Like, sophisticated parties have decided we need to figure out what to do with a combination. And nobody did that here either way. And your agreement. Exactly. But I would also give another example of a case that has facts very similar here, which is a Southern California gas case. And in that case, there was neither an inclusion or an exclusion of combinations. And the court in that case found that the arising from language was very broad. Is that the Ninth Circuit case? That was the California Ninth Circuit case. That's correct. And the indemnification obligation there was very broad, despite the fact that there were other suppliers of components that contributed to the infringement. Nonetheless, the court found that the supplier of the software was liable under the broad indemnification provision due to the arising from language. And there was no other exclusion that excluded modifications. I see my time is up. Yes. So your position is that the statute basically creates this indefinite for all-time warranty against any infringement claims? No. I would not say that that's what our position was. The statute, I think, what our argument here has been is that in this case, it would apply to the facts of this case. Because at the time that those shapers were delivered to Wright Medical by Spynology, they were not free of a rightful claim of infringement. But there was no pending claim of infringement, right? Right. But I don't think a pending claim of infringement is a prerequisite for the warranty of non-infringement. Why are you not arguing then for if any claim ever arises, they're insuring you forever against any infringement claim? Because in theory, it could have existed at the time of delivery. And I think in many cases, that the infringement claim will come after the product has already been delivered to the seller. So if the infringement is based on, you know, prevents the buyer from using that product exactly in the manner that it was intended to be used, then we would say in that type of situation that the warranty of non-infringement would apply. And is there a good case that supports that position? There is not. You know, what we have been relying on in our arguments here is an intent that is evident from other cases that have been interpreting what a rightful claim is. And a rightful claim is any claim that would cast a shadow on a buyer's ability to use the good. Is there evidence of that claim presented in the summary judgment motion? No. Other than, again, it was the OrthoPhoenix. To the extent that we were asserting that there was a rightful claim of infringement, it would have been based on the OrthoPhoenix infringement allegations and the OrthoPhoenix lawsuit. So again, it was the same underlying facts that had to do with the breach of contract claim. So whenever there's a claim such as OrthoPhoenix made, then that would trigger the warranty claim under the statute? That is our position, yes, Your Honor. And is, I mean, normally with things like the UCC, there are notes, commentary in terms of the adoption of the UCC provision or cases that interpret that, and you're saying that you really haven't come up with any on this? That is correct. And, again, there was one comment in the Tennessee Code there that did mention refer to protecting a buyer's ability to use the good. And what we are taking from that is that we're seeing that there is some intent in that comment, as well as other case law that has interpreted rightful claim, that it doesn't just protect infringement of the good, but also it protects the buyer's ability to use that good. And it wouldn't be all uses of the good, but in this particular case, this is the precise manner in which that good is meant to be used. It's meant to be used with the cannula. And the thought that a seller can deliver a good to a buyer and then the buyer can never use that good without fear of infringement in exactly the manner in which it was designed to be used seems to compel the conclusion or support the conclusion here that the warranty of non-infringement should apply to those types of circumstances. What about Spynology's argument that the unless-otherwise-agreed language means that you agreed in the contract, you have a specific provision, so it's otherwise agreed? What that language means is not that there's another contract that's existing, but whether the parties agreed to some different types of provision than what's in the warranty of non-infringement or else disclaimed that provision. Here under the contract, pretty much the indemnification agreement that was in that contract aligned almost perfectly with what's in the UCC. It had the same sort of exception in it and a warranty against the claim of infringement on the device. Thank you. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case?